IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

      v.                                          Case No.:  25-cr-52-wmc

ANDREW POGOSYAN,

           Defendant.

---

**PLEA AGREEMENT**

---

1. This is the proposed plea agreement between the defendant and the United States in the above-captioned case.

2. **PLEA AND PENALTIES:** The defendant agrees to waive indictment and plead guilty to the four-count information filed by the United States Attorney's Office. Count 1 charges a violation of Title 18, United States Code, Section 371, which carries a maximum penalty of five years in prison, a $250,000 fine, a three-year period of supervised release, and a mandatory $100 special assessment. Counts 2 through 4 charge violations of Title 18, United States Code, Section 554, which carries maximum penalties of ten years in prison, a $250,000 fine, a three-year period of supervised release, and a mandatory $100 special assessment. In addition to these maximum penalties, any violation of a supervised release term could lead to an additional imprisonment term pursuant to 18 U.S.C. § 3583. The defendant agrees to pay the special assessment at or before sentencing and understands that the Court will enter an order requiring the immediate special assessment payment under 18 U.S.C. § 3013. In an appropriate case, the defendant could be held in contempt of court and receive an additional sentence for failing to pay the special assessment.

3. **RIGHTS WAIVED BY PLEADING GUILTY:** The defendant acknowledges by pleading guilty, that he is giving up these rights: (a) to plead not guilty and to persist in that plea; (b) to a jury trial; (c) to be represented by counsel – and if necessary to have the Court appoint counsel – at trial and at every other stage of the trial proceedings; (d) to confront and cross-examine adverse witnesses; (e) to be protected from compelled self-incrimination; (f) to testify and present evidence; and (g) to compel the attendance of witnesses.

4. **IMMIGRATION CONSEQUENCES:** The defendant understands that upon conviction, if he is not a United States citizen, he may be removed from the United States, denied citizenship, and denied future admission to the United States. The defendant nevertheless affirms that he wants to plead guilty regardless of any removal and immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

5. **APPELLATE RIGHTS WAIVER:** The defendant acknowledges, after consultation with his attorney, that he fully understands the extent of his rights to appeal the conviction and sentence in this case. By his signature below, the defendant knowingly and voluntarily waives all rights, including those conferred by 18 U.S.C. § 3742, to appeal his conviction and any sentence of imprisonment, including any issues with respect to the calculation of the advisory sentencing guideline range or the reasonableness of the sentence imposed.

6. **FACTUAL BASIS:** The defendant agrees that the following facts are true, correct, and that, if this case were to proceed to trial, the government would be able to prove these facts beyond a reasonable doubt. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described herein.

*The Export Control Reform Act and Export Administration Regulations*

The Export Administration Regulations (EAR), Title 15, Code of Federal Regulations, Parts 730-774, were promulgated by the United States Department of Commerce, Bureau of Industry and Security (BIS) to regulate the export of goods, technology, and software from the United States.

Through the EAR, BIS reviews and controls the export of certain items from the United States to foreign countries in accord with Title 15, Code of Federal Regulations, Sections 734.2-3. In particular, BIS places restrictions on the export and reexport of items that it determines could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. Under the EAR, such restrictions depend on several factors, including the technical characteristics of the item, the destination country, the end user, and the end use of the item.

The most sensitive items subject to the EAR controls are identified on the Commerce Control List (CCL) set forth in Title 15, Code of Federal Regulations, part 774, Supplement Number 1. Items listed on the CCL were categorized by an Export Control Classification Number (ECCN), each of which is subject to export control

requirements depending on destination, end use, and end user of the item. Items subject to the EAR but not specifically listed on the CCL are classified as "EAR99."

In response to Russia's full-scale invasion of Ukraine on February 24, 2022, BIS began implementing a series of export controls under Title 15, Code of Federal Regulations, Part 746 (Embargoes and Other Special Controls). These regulations expanded licensing requirements for exports to Russia and initially targeted Russia's defense, aerospace, and maritime sectors. On September 16, 2022, BIS further expanded the licensing requirements for Russia and imposed new export controls for "lower-level items potentially useful to Russia's chemical and biological weapons production capabilities." 87 Fed. Reg. 57068 (Sept. 16, 2022); 15 C.F.R. § 746.5(a)(1)(iii). These items, which are set forth in Title 15, Code of Federal Regulations, Part 746, Supplement No. 6, consist of discrete chemicals, biologics, fentanyl and its precursors, and related equipment, as well as equipment and other items that BIS has determined are not manufactured in Russia or are otherwise important to Russia in developing advanced production and development capabilities to enable advanced manufacturing across a number of industries.

*The Conspiracy to Defraud the United States*

POGOSYAN is a Russian-born lawful citizen of the United States who, since in and around at least September 2022, has been engaged in the unlawful export of merchandise from the United States – specifically, scientific lab and diagnostic research equipment components, which are subject to the EAR. In February 2002, POGOSYAN incorporated Omega Diagnostics LLC (OMEGA), a distribution service company. POGOSYAN used his company, OMEGA, to distribute scientific and diagnostic research equipment components to Russia and elsewhere. POGOSYAN is the sole owner and employee at OMEGA, which is located in Madison, Wisconsin.

At all relevant times:

- Russian Company-1, which was a company that, amongst other things, provided chemical research and testing activity for the 27th Scientific Center of the Russian Ministry of Defense[1], was located in St. Petersburg, Russia.

- Co-Conspirator A was the Department Head for Procurement and Logistics for Russian Company-1.

---

[1] The 27th Scientific Center of the Russian Ministry of Defense was placed on the BIS Entity List for its involvement in chemical weapons development for the Russian military (Federal Register 86 FR 125929).

- Russian Company-2, which provided scientific and diagnostic research equipment components to other Russian companies, was located in St. Petersburg, Russia.

- Co-Conspirator B was a representative of Russian Company 2 and was a reseller of scientific and diagnostic research equipment.

- Turkish Company 1, which was distributor of cargo packaging materials was located in Istanbul, Turkey.

- Kazakhstan Company-1, which was a provider of scientific and diagnostic research equipment components to other companies and end-users, was located in Almaty, Kazakhstan.

Prior to the full-scale Russian invasion of Ukraine in February 2022, POGOSYAN and OMEGA exported scientific lab equipment components almost exclusively to end users in Russia. Electronic Export Information[2] (EEI) filings indicate that from January 2021 to February 2022, OMEGA had completed approximately 29 exports directly to Russia. Following Russia's full-scale invasion and the imposition of new and enhanced export controls on items destined for Russia, OMEGA's direct shipments to Russia decreased exponentially. Instead, OMEGA began exporting scientific and diagnostic research equipment components to Turkish Company-1 beginning in or around May 2022 and to Kazakhstan Company-1 beginning in or around October 2022. As of July 9, 2023, POGOSYAN, through OMEGA, had exported at least 16 shipments to Turkish Company-1 and Kazakhstan Company-1.

According to U.S. Custom and Border Patrol's Automated Export System (AES) data, since March 31, 2022, OMEGA has altered its export activities significantly. In addition to exporting scientific and diagnostic research equipment components to Turkey and Kazakhstan, OMEGA also began exporting items to Uzbekistan, Latvia, and Lithuania. The vast majority of exports by POGOSYAN and OMEGA to Turkey, Kazakhstan, Uzbekistan, Latvia, and Lithuania were transshipped to ultimate end-users in Russia.

*The Conspiracy*

Between at least in or about September 2022 and continuing to in or about October 2023, ANDREW POGOSYAN, together with others known and unknown,

---

[2] Electronic Export Information ("EEI") is an electronic declaration that must be filed with the U.S. Customs and Border Protection when exporting goods from the United States to a foreign country. The EEI is filed through the Automated Export System ("AES") managed by the Census Bureau.

4

a. willfully exported and caused the exportation of goods from the United States to Russia without first having obtained the required licenses from the Department of Commerce in violation of Title 50, United States Code, Section 4819(a), and Title 15, Code of Federal Regulations, Part 746, Supplement Number 6;

b. knowingly failed to file, and submitted false and misleading export information through EEI filings and AES, and caused the same, in violation of Title 13, United States Code, Section 305, and Title 15, Code of Federal Regulations, Section 30.71;

c. knowingly and fraudulently exported and sent, and attempted to export and send from the United States merchandise, articles, and objects contrary to laws and regulations of the United States, and received, concealed, bought, sold, and facilitated the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be intended for exportation contrary to laws and regulations of the United States, in violation of Title 18, United States Code, Section 554; and

d. defrauded the United States government by interfering with and obstructing a lawful government function, that is, the enforcement of laws and regulations relating to the export, re-export, and supply of goods and provision of services from the United States to Russia by dishonest means.

*Objects of the Conspiracy*

The objects of the conspiracy were:

- to acquire scientific and diagnostic research equipment components that were manufactured and sold in the United States on behalf of entities that operated in Russia;

- to export scientific and diagnostic research equipment components from the United States indirectly to Russia and to Russian end users;

- to conceal the prohibited activities and transactions from detection by the U.S. government so as to avoid penalties and disruption of the illegal activities;

- to profit through these illegal activities; and

- to evade the prohibitions and licensing requirements of ECRA and the EAR.

*Manner and Means of the Conspiracy*

Throughout the course of the conspiracy, POGOSYAN, Co-Conspirator A, Co-Conspirator B, and others placed orders for scientific and diagnostic research equipment components with companies in the United States on behalf of Russian customers and attempted to obfuscate the fact that their end users of the equipment were in Russia.

5

POGOSYAN and other co-conspirators, used the following manner and means, among others, to accomplish the objects of the conspiracy:

- POGOSYAN and other co-conspirators, including individuals associated with Russian Company-1 and Russian Company-2, used email and other means to communicate;

- Co-Conspirator A, along with individuals associated with Russian Company-1, and Co-Conspirator B, along with individuals associated with Russian Company-2, solicited quotes from and negotiated with POGOSYAN for the procurement of U.S. scientific and diagnostic research equipment components for Russian end-users;

- POGOSYAN purchased items from companies in the United States to fulfill orders from Russian customers, including by providing false information to U.S. companies;

- POGOSYAN and other co-conspirators, including individuals associated with Russian Company-1 and Russian Company-2, arranged for shipment of the U.S. goods from the United States to transshipment points in Kazakhstan, Uzbekistan, Turkey, Latvia, and Lithuania to conceal the true end users and end destinations;

- POGOSYAN falsified or failed to submit export and shipping records regarding shipments from the United States, including by providing false and misleading information to the shippers and freight forwarders, to conceal the ultimate destination of the goods and the ultimate end users of the goods;

- POGOSYAN received payment from individuals associated with Russian Company-1 and Russian Company-2 for the shipment of controlled items to end- users in Russia; and

- POGOSYAN and other co-conspirators, including individuals associated with Russian Company-1 and Russian Company-2, caused the U.S. goods to be exported from the United States to individuals and entities in Russia without obtaining the required licenses from the Department of Commerce.

*Overt Acts in Furtherance of the Conspiracy*

Each of the exports described below, which were made by POGOSYAN, on behalf of OMEGA, after September 16, 2022, was intended for transshipment to Russia in violation of U.S. export controls. POGOSYAN had direct knowledge of this intended destination and actively participated to accomplish the successful transshipment.

The relevant exports are:

**Four Thermo POP-7 Polymer Pouches:** On or around December 10, 2022, POGOSYAN exported four Thermo POP-7 Polymers, which are consumables for use in scientific instruments and act as the separation medium to aid in the separation of chemicals for testing. The export of the four Pop-7 Polymers were made to Russian Company-2 in fulfilment of an order that POGOSYAN received directly from Co-Conspirator B on or around September 9, 2022. A BIS License Determination concluded that these Thermo Polymers are classified as EAR99 and are controlled under section 746 Supplement No. 6, Russian Industry Section Sanctions. Within the time frame of September 16, 2022 to December 10, 2022, such item required a BIS export license to be shipped to Russia, which none of POGOSYAN, OMEGA, Co-Conspirator B, or Russian Company-2 possessed.

POGOSYAN caused a false EEI filing for this shipment to be submitted to the U.S. government that inaccurately listed Turkish Company-1 as the ultimate consignee (*i.e.*, end user) and Turkey as the ultimate destination for this shipment.

**One Waters Automated Back Pressure Regulator Needle and one Restek TRX-1 Pona Capillary Column:** On or around January 25, 2023, POGOSYAN exported a Waters Needle, which is a stainless steel fluid valve needle that is a replacement/consumable part for various laboratory analytical instruments. The Waters Needle helps control the pressure of various fluids being diagnosed for chemical composition. On or about the same date, POGOSYAN exported a Restek Column, which is a consumable and metallic tubular device used to help separate compounds as part of chemical analysis in laboratory diagnostics. POGOSYAN exported both the Waters Needle and the Restek Column to Russian Company-1 in fulfillment of an order that POGOSYAN received directly from Co-Conspirator A on or around January 11, 2023. BIS License Determinations concluded that the Waters Needle was classified as EAR99 and is controlled under section 746 Supplement No. 6, Russian Industry Sector Sanctions. The Restek Column was classified under EAR99, with HTS Code 9027.90 captured by HTS Code listing in Part 746, Supplement 4, controlled under Russia Sanctions per 746.5(a)(1)(ii). Within the time frame of January 11, 2023, to January 25, 2023, such items required a BIS export license to be shipped to Russia, which none of POGOSYAN, OMEGA, Co-Conspirator A, or Russian Company-1 possessed.

POGOSYAN caused a false EEI filing for this shipment to be submitted to the U.S. government that inaccurately listed Kazakhstan Company-1 as the ultimate consignee (*i.e.*, end user) and Kazakhstan as the ultimate destination for this shipment.

**One Thermo TracePlot Column:** On or around January 30, 2023, POGOSYAN exported a Thermo TracePlot Column which is a consumable metallic tubular device used in analytical systems. The column helps to separate compounds, solvents, isomers, and other materials as part of chemical analysis in laboratory diagnostics. The Thermo Column was exported to Russian Company-2 in fulfilment of an order that POGOSYAN received directly from Co-Conspirator B on or around January 21, 2023. A BIS License Determination concluded that the Thermo Column is classified as EAR99 and pursuant to Section 746.5(a)(1)(iii) and Supplement No. 6, Paragraph f(18) of Part 746 of the EAR. Within the time frame of January 21, 2023 to January 30, 2023, this item required a BIS export license to be shipped to Russia, which none of POGOSYAN, OMEGA, Co-Conspirator B, or Russian Company-2 possessed.

POGOSYAN caused an EEI filing for this shipment to be submitted to the U.S. government that inaccurately listed Turkish Company-1 as the ultimate consignee (*i.e.*, end user) and Turkey as the ultimate destination for this shipment.

**One CEM Corporation Rink Amide ProTide Resin Pack**: On or around January 30, 2023, POGOSYAN exported a CEM Corporation Rink Amide ProTide Resin Pack, which is a package of resin substance composed of organic compounds used in various diagnostic tools for a range of biological testing to Turkish Company-1 in fulfilment of an order that POGOSYAN received directly from Co- Conspirator B on behalf of Russian Company 2 on or around January 21, 2023. A BIS License Determination concluded that the CEM Corporation ProTide Resin Pack is classified as EAR99 and is controlled under section 746 Supplement No. 6, Russian Industry Sector Sanctions. Within the time frame of January 21, 2023 to January 30, 2023, this item required a BIS export license to be shipped to Russia, which none of POGOSYAN, OMEGA, Co- Conspirator B, Russian Company 2, or Turkish Company-1 possessed.

POGOSYAN caused an EEI filing for this shipment to be submitted to the U.S. government that inaccurately listed Turkish Company-1 as the ultimate consignee (*i.e.*, end user) and Turkey as the ultimate destination for this shipment.

*POGOSYAN's Knowledge and Willful Disregard of Export Controls*

POGOSYAN knew that items he exported to Turkish Company-1, and Kazakhstan Company-1 would be transshipped to Russia in violation of U.S. export controls. POGOSYAN has been involved in the procurement of scientific and diagnostic

research equipment for over twenty-five years. In September 2018, due to the high volume of goods POGOSYAN was sending to Russia, and for shipping to a Russian entity associated with weapons development, POGOSYAN was interviewed by Special Agents from the Federal Bureau of Investigation (FBI), and the U.S. Department of Commerce, Office of Export Enforcement (OEE). Prior to the interview, POGOSYAN was provided with an "Is Informed Letter" advising him that he could not sell to specific Russian entities without a license due to military and end user/use and diversion concerns. During the interview, Special Agents provided POGOSYAN with materials and explained the licensing requirements related to exports to Russia and the requirement of knowing end users to make license determinations. During this meeting, POGOSYAN acknowledged he understood these requirements and regulations.

POGOSYAN was advised about the sanctions and export controls related to Russia's invasion of Ukraine. Specifically, on March 22, 2022, a representative from a U.S. supplier sent POGOSYAN a link informing him about the Russian sanctions and export restrictions. In the email, the representative explained how the U.S. supplier was no longer conducting business with Russia due to sanctions. POGOSYAN responded to this email, and sent a false address for the facilitation of the planned export that he knew was intended for Russia. Additionally, on June 9, 2022, a U.S. based supplier of scientific research products copied POGOSYAN on an inquiry for OMEGA to supply goods for shipment to a Russian customer. In the email, the supplier advised the Russian customer and POGOSYAN that they would not sell U.S. goods to Russian end-users, or those "intending to send U.S. goods through third countries," until the "sanctions are lifted." Upon receiving this email, POGOSYAN ceased communicating with this company and instead began sourcing from other U.S.-based suppliers. Additionally, on July 27, 2022, a U.S. freight forwarder emailed POGOSYAN about compliance requirements on a pending order that was ultimately bound for Russia. On the same day, POGOSYAN emailed back a signed "Declaration of Compliance" verifying he would comply with export controls and laws, to include the specific Russian sanctions that must be followed when completing U.S. exports.

Additionally, on October 18, 2023, POGOSYAN was interviewed by OEE and FBI Special Agents after the execution of a search warrant. During the interview, POGOSYAN explained his business and how he had been involved with shipping items to Russia for several years. He also admitted that he was aware of the U.S. sanctions and export controls for Russia and that he had provided false information in EEI filings and other documents to conceal his illegal exports to Russia.

The defendant acknowledges that through the aforementioned facts and other evidence, the United States could prove that the defendant knew the items he sent were subject to export regulations and licensing requirements. The defendant further acknowledges that he did not seek or obtain a license to export the items.

9

The defendant acknowledges that Madison, Wisconsin is located in the Western District of Wisconsin.

7. **SCOPE OF RESOLUTION:** The United States agrees that this guilty plea will completely resolve all possible federal criminal violations that have occurred in the Western District of Wisconsin provided that two conditions are met: (a) the criminal conduct relates to the conduct described in the information; and (b) the criminal conduct was known to the United States as of the date of this plea agreement. This agreement not to prosecute is limited to those types of cases for which the United States Attorney's Office for the Western District of Wisconsin has exclusive decision-making authority. The defendant also understands that the United States will make its full discovery file available to the Probation Office for its use in preparing the presentence report.

8. **ACCEPTANCE OF RESPONSIBILITY:** The United States agrees to recommend that the Court, in computing the advisory Sentencing Guideline range, and in sentencing the defendant, gives the defendant the maximum available reduction for acceptance of responsibility. This recommendation is based upon facts currently known to the United States and is contingent upon the defendant accepting responsibility according to the factors set forth in USSG § 3E1.1. Further, the United States' agreement to recommend a reduction for acceptance of responsibility is also based on the defendant providing a full and truthful accounting in the required financial statement and, if applicable, the defendant's efforts to make immediate restitution payments. The United States is free to withdraw this recommendation if the defendant has previously engaged in any conduct that is unknown to the United States and is inconsistent with acceptance of responsibility, or if he engages in any conduct between the date of this plea agreement and the sentencing hearing, which is inconsistent with acceptance of responsibility. This recommendation is consistent with the defendant signing this plea agreement on or before June 2, 2025.

9. **FINANCIAL STATEMENT:** The defendant agrees to complete the attached financial statement and return it to this office within one week of the guilty plea hearing. The defendant agrees that this financial statement will be a full and truthful accounting, including all available supporting documentation. The defendant authorizes the United States Attorney's Office to run the defendant's credit report. The defendant also agrees that the probation office may disclose to the United States all financial statements to be completed by the defendant in connection with the preparation of the presentence report, together with all supporting documents.

10. **SENTENCING DISCUSSIONS:** Other than agreements specifically set forth in this plea agreement, the defendant understands that sentencing discussions are not part of the plea agreement. The defendant should not rely upon the possibility of a particular sentence based upon any sentencing discussions between defense counsel and the United States, other than those memorialized in this plea agreement.

10

13. **THIS IS THE ONLY PLEA AGREEMENT:** By our signatures below, the defendant and defense counsel acknowledge that the plea agreements sent on March 7, 2025 and April 23, 2025 are rescinded.

TIMOTHY M. O'SHEA
United States Attorney

June 23, 2025
Date

By: _____
CHADWICK M. ELGERSMA
Assistant United States Attorney

6/23/2025
Date

By: _____
CHRISTOPHER M. COOK
Trial Attorney, U.S. Department of Justice,
National Security Division, Counterintelligence
and Export Control Section

6-20-2025
Date

_____
WILLIAM COFFIELD
Attorney for the Defendant

6/18/2025
Date

_____
ANDREW POGOSYAN
Defendant

## ACKNOWLEDGEMENTS

I, Andrew Pogosyan, am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed the entire agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney, including the charges against me, the elements of those charges, and possible defenses. I am satisfied that my attorney has provided effective assistance of counsel.

_6/18/2025_  
Date

_[signature]_  
ANDREW POGOSYAN  
Defendant

I am the defendant's attorney. I have reviewed this agreement carefully with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_6-20-2025_  
Date

_[signature]_  
WILLIAM COFFIELD  
Attorney for Defendant