**UNITED STATES DISTRICT COURT**
**FOR WESTERN DISTRICT OF WISCONSIN**

**UNITED STATES OF AMERICA,**

**v.**

**ANDREW POGOSYAN,**

***Defendant.***

**Case No: 3:25-cr-00052-WMC**

# DEFENDANT'S SENTENCING MEMORANDUM

Defendant Andrew Pogosyan ("Mr. Pogosyan"), through counsel, respectfully submits this Memorandum to aid the Court in sentencing, which is scheduled for October 7, 2025, at 10:00 a.m.

## I. INTRODUCTION

As explained in more detail below, we respectfully submit that all the facts and circumstances here, taken together, compel a sentence outside of the Sentencing Guidelines; specifically, we ask for a sentence of home confinement and supervised probation. There are four primary factors we ask the Court to consider:

**First, Mr. Pogosyan's otherwise exemplary personal background:** Mr. Pogosyan has admitted his criminal conduct, accepted responsibility, and expressed sincere remorse. Mr. Pogosyan has never before been involved in any criminal conduct. As demonstrated by the letters of support submitted to the Court[1], Mr. Pogosyan is a good person who has led an otherwise unblemished life, is greatly respected by those in his life, cares deeply about others, and has given freely of his time and resources.

[1] *See* Exhibit1.

**Second, the nature of the conduct at issue:** This case involves certain shipments of United States manufactured products to Russia. As set forth in greater detail *infra,* Mr. Pogosyan's customers were scientific researchers working on medical, environmental and agricultural research.

**Third, the hardship already suffered:** The loss of his business and the anxiety of the pending conviction for over two years have caused significant hardship for Mr. Pogosyan.

**Fourth, a comparison to sentences imposed in other cases involving export violations:** A review of other cases demonstrates that imposing a sentence within the Sentencing Guidelines would be disproportionate and unjust when compared to the sentences imposed on defendants in other cases involving export violations.

In consideration of the relevant facts and applicable sentencing factors, set forth in detail below, we respectfully submit that a sentence of time served, and a stipulated judicial order of removal from the United States, will fully serve the purposes of federal sentencing as well as the interests of justice.

## II. THE ADVISORY GUIDELINES CALCULATION

We recognize that the export control laws are serious and that violating those laws deserves appropriate punishment. We respectfully submit, however, that Mr. Pogosyan's conduct was measurably different from the typical violator.

The parties and Probation agree that: the base offense level for the charged count is 26 (U.S.S.G. § 2M5.1(a)(1)); a 3-level reduction for acceptance of responsibility (§ 3E1.1(a)-(b)) and a 2-level reduction for zero-point offender status (§ 4C1.1(a)) are appropriate, **which result in a level 21**. *Presentence Investigation Report ("PIR")* at paragraphs 32-42.

## III. SENTENCING PROCEDURE POST-*BOOKER*

In the post-*Booker* era, the Sentencing Guidelines are no longer mandatory. *United States v. Booker,* 543 U.S. 220 (2005). The applicable range under the advisory Sentencing Guidelines comprises only one of many factors aiding the court in fashioning an appropriate sentence. The sentencing court's duty is to consider each factor identified in 18 U.S.C. § 3553(a) and "impose a sentence sufficient, but not greater than necessary, to comply with" the purposes of sentencing set forth in the statute. *See* 18 U.S.C. § 3553(a). The court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007).

Although the Sentencing Guidelines do not ordinarily take into account matters relating to the history and characteristics of the defendant such as "age, education… employment history… family ties," medical condition, and the like, the sentencing court may do so in order to impose a just sentence that fulfills the purposes of § 3553(a). *Rita v. United States*, 127 S. Ct. 2456, 2473 (2007). This Court may disregard the Sentencing Guidelines based on a determination that they do not properly reflect the § 3553(a) factors, are based upon unsound judgment, or fail to address the individual characteristics of the defendant. *Id.* at 2468.

## IV. APPLICATION OF 18 U.S.C. SECTION 3553(a)

Pursuant to the United States Supreme Court's opinion in *Booker*, a court must consider each of the factors set forth in Section 3553(a) when fashioning an appropriate sentence. 543 U.S. at 259-60. The *Booker* factors are:

a. The nature and circumstances of the offense and the history and characteristics of the defendant;
b. The need for the sentence imposed:
    i. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    ii. to afford adequate deterrence to criminal conduct;
    iii. to protect the public from further crimes of the defendant; and

iv. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

c. The kinds of sentences available;
d. The applicable Sentencing Guidelines;
e. Any pertinent Sentencing Guidelines' policy statement;
f. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
g. The need to provide restitution to any victims of the offense.

*Id.* Each of these factors is discussed below.

Section 3553(a), "as modified by *Booker*, contains an overarching provision instructing district courts to impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Sentencing under Section 3553(a) therefore requires a court to start with the minimum sentence permissible. As discussed below, and for the reasons provided, we respectfully submit that application of the Section 3553(a) factors to this case establishes and justifies that a sentence of probation with period of home confinement is appropriate.

**A. Nature and Circumstances of the Offense and History and Characteristics of the Defendant.**

*A.1 <u>Nature and Circumstances of the Offense Conduct</u>*.

Mr. Pogosyan <u>legally</u> exported scientific and diagnostic research equipment to customers in Russia for over twenty years prior to the sanctions imposed on Russia due to its invasion of Ukraine. In fact, many of his customers were researchers he knew when he lived in Russia. As such, Mr. Pogosyan understood that none of the equipment he supplied was being used for nuclear or military purposes. Rather, Mr. Pogosyan understood:

- The THERMO POP-7 Polymer pouch, Catalog Number 4393714, was used for DNA sequencing of new variants of COVID-19 viruses for the development of a vaccine against COVID-19 virus;

- The WATERS Automated Back Pressure Regulator Needle is designed to be used with Waters liquid chromatographs for analysis of small molecular weight cations or anions;
- The RESTEK TRX-1 Pona Capillary Column is specifically designed for separation of different antibiotics, herbicides, perfluorinated compounds, parabens, fungicides and is utilized for analysis of ecological conditions;
- The Thermo TracePlot Column, Catalog Number 26004-6030, is used for separation of ethane, ethylene, and acetylene in air samples, having nothing to do with analysis of harmful compounds; and
- The CEM Corporation ProTide Resin Pack only contains enough resin to produce a few grams of peptides, an amount utilized as an education tool, but nowhere near an amount used for any military purpose.

Additionally, the most sensitive items subject to the controls under the Export Administration Regulations ("EAR") are identified on the Commerce Control List ("CCL"). (PSR at Paragraph 7). Significantly, while the items Mr. Pogosyan exported required a license under EAR99, none of the items were on the CCL. The items exported by Mr. Pogosyan were commonly used laboratory components. To give perspective, similar items currently requiring a license under EAR99 for export to Russia include paper clips and staples. *See* 15 CFR § 746, Supplement No. 4.

Mr. Pogosyan does not deny his role, and he accepts full and complete responsibility. Mr. Pogosyan has never before engaged in criminal conduct. Mr. Pogosyan acknowledges that his role in the export of United States manufactured goods without a license to Russia was a violation of United States law:

> While Andrew believed his actions were still serving humanitarian and medical purposes, he now fully understands and regrets that this constituted a violation of U.S. sanctions. He is deeply remorseful for this mistake.

Exhibit 1 at 2.

We respectfully submit, however, that these facts should be considered as mitigating circumstances for Mr. Pogosyan's offense, and respectfully urge the Court to deem the nature

and circumstances of his offense conduct as a factor weighing in favor of a sentence outside the advisory Sentencing Guidelines.

*A.2 History and Characteristics of the Defendant.*

Mr. Pogosyan was born in Moscow on July 22, 1957. Raised in a loving family, Mr. Pogosyan's parents, Olga Konstantinovna Ogneva and Joseph Pogosyan, instilled good character and morals in their children and taught them the value of a good education. Mr. Pogosyan's mother worked in biochemistry, and his father worked in electrical engineering. Mr. Pogosyan remains close with his brother, Sergei, who works as an electrical engineer and still lives in the apartment in Moscow where Mr. Pogosyan was raised as a child. Mr. Pogosyan completed high school, university, and earned a Ph.D. in food microbiology and biotechnology in 1984.

Mr. Pogosyan married his wife, Valentina Malukovskaya, in 1988. Mr. Pogosyan has a stepdaughter, Helen Grigorieva, and a daughter, Polina Pogosyan. They all emigrated to the United States in 1990. In 2010, due to Valentina's inability to find work in her profession and because her aged parents were in poor health, she moved back to Moscow. Valentina, Helen and Polina all currently reside in Moscow.

The letters of support submitted on behalf of Mr. Pogosyan come from friends and colleagues (*see* Exhibit 1) and represent the depth and breadth of Mr. Pogosyan's positive impact on those around him. The letters of support contain personal anecdotes of the many ways in which Mr. Pogosyan has selflessly impacted his community and describe his efforts to help people in any way possible:

"He is a genuinely very warm-hearted and sympathetic person. Andrew has been active in helping various people in the Russian-speaking community in Madison, and we note that they had very diverse backgrounds, different stories of moving to the USA, coming from different countries that were once part of the Soviet Union, including many Ukranians." *Id.* at 4.

"Andrew has been nothing short of a model citizen – law-abiding, kind, generous, and engaged in the Madison community. He has always shown philanthropic spirit, particularly with the greater Russian-speaking community." *Id* at 2.

"As friends, we've witnessed Andrew's dedication and compassion to his family, friends, and community, especially through his involvement in organizing annual New Year celebrations events for community kids, earning him widespread respect and admiration." *Id.* at 3.

*A.2.1 Age*

An additional component of a defendant's history and characteristics that a court may consider in analyzing the Section 3553(a) factors is age. *See* U.S.S.G. §5H1.1. As pointed out by Probation, Mr. Pogosyan's age may warrant a sentence outside of the advisory guideline system. *PIR* at paragraph 98. Additionally, Mr. Pogosyan's friends have expressed real concern for Mr. Pogosyan's health.[2]

Considering Mr. Pogosyan's nature, characteristics, and age, we respectfully urge the Court to consider them mitigating factors weighing in favor of a sentence outside the advisory Sentencing Guidelines.

**B. Need for the Sentence Imposed to Meet the Goals of Punishment.**

*B.1 A sentence of home confinement and supervised probation combined with the other losses suffered by the Defendant will reflect the seriousness of the offense, promote respect for the law, and provide just punishment.*

Section 3553(a)(2)(A) directs that the punishment be governed by the gravity of the crime. The combination of a felony conviction, home confinement, supervised probation, and the loss of his business reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. As a well-respected professional and otherwise law-abiding citizen,

[2] "Andrew has had some pretty serious heart and leg surgeries. We're worried that he just won't be able to handle all the stress of incarceration, and are generally worried for his health." Exhibit 1 at 5.

Mr. Pogosyan will never escape the stigma of this conviction. The impact of this conviction is particularly effective given his lack of criminal history and standing in society.

The combination of these factors fulfills the demands of § 3553(a)(2)(A). We respectfully submit that a sentence imposing a period of incarceration would constitute a punishment that is greater than necessary to accomplish the sentencing objectives. In light of the circumstances of the offense conduct and the nature and history of the defendant as discussed *supra*, as well as the disparity between this and similar cases that would be created, as discussed *infra*, a sentence of home confinement and a period of supervised probation is appropriate.

*B.2 <u>A sentence of home confinement and supervised probation combined with the other losses suffered by the Defendant is sufficient to deter future criminal conduct</u>.*

Section 3553(a)(2)(B) addresses the need for a sentence to deter future offense conduct. Mr. Pogosyan's life has been turned upside down, he faces the stigma of a conviction, his career and livelihood are over. These weighty consequences serve as deterrence to future criminal conduct. Indeed, Mr. Pogosyan himself is as deterred from future criminal activity as any individual conceivably could be. His life as he knew it is changed forever – he has already lost his livelihood and his reputation. Mr. Pogosyan will not commit further crimes.

In addition to this punishment, Mr. Pogosyan does not pose a risk of recidivism – he is an otherwise law-abiding individual who "[did] an incredibly dumb thing" and "[is] not the type of defendant the guidelines were designed to punish." *United States v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005). Thus, as noted *supra*, Mr. Pogosyan is not likely to reoffend, and the combined punishment of a conviction, home confinement, supervised probation and other serious adverse consequences mentioned in this Memorandum adequately address the need for deterrence.

With respect to the community at large, a sentence of home confinement and supervised probation, coupled with the losses Mr. Pogosyan has suffered, will send a clear message that others who may consider engaging in similar conduct should take pause, re-evaluate their current state of diligence regarding compliance with export control laws, and consider the devastating consequences that will follow should they be prosecuted.

*B.3 The public needs no protection from Mr. Pogosyan.*

Under § 3553(a)(2)(C), the sentence should protect the public. *See United States v. Baker*, 502 F.3d 465 (6th Cir. 2007) (sentence of probation with one-year house arrest in part because incarceration not necessary to protect the public). Mr. Pogosyan has never been, and is currently not, a threat or danger to the public. As already noted, this is Mr. Pogosyan's very first contact with any criminal justice system. The absence of any criminal history is a valid reason for finding that the purposes of sentencing will be adequately served by a sentence outside the advisory Sentencing Guidelines. *See, e.g., United States v. Huckins*, 529 F.3d 1312, 1318-19 (10th Cir. 2008) (a district court "may weigh a defendant's lack of a criminal record" in deciding whether to grant a downward variance from the advisory Sentencing Guidelines range "even when the defendant has been placed into a criminal history category of I").

While the lack of criminal history demonstrates the uncharacteristic nature of his offense conduct, Mr. Pogosyan's immediate acceptance of responsibility and excellent behavior, further demonstrate that additional incarceration is not warranted in this case. Incarceration will not provide greater public protection, as the public need not be protected from Mr. Pogosyan in the first place. Indeed, to the contrary, nearly every one of the letters of support and his personal history attests that the public will be at a loss if Mr. Pogosyan is sentenced to a term of incarceration.

*B.4 If needed, Mr. Pogosyan may obtain other correctional training or care outside of prison.*

Section 3553(a)(2)(D) expresses the need for a sentence to serve an educational and rehabilitative purpose. Mr. Pogosyan is highly educated and has a well-established work history. While Mr. Pogosyan may theoretically improve himself using the types of educational programs offered in the Bureau of Prisons, these types of programs are more abundantly available and better suited to his needs outside of prison.

In any event, rehabilitation is clearly not necessary in this case, as Mr. Pogosyan does not have any history of substance abuse or mental health issues, and has a documented history of loving and supporting his family. *See United States v. Autery*, 555 F.3d 864, 868 (9th Cir. 2009) (court's variance to probation not unreasonable in part because of defendant's positive characteristics "such as his having no history of substance abuse, no 'interpersonal instability,' no 'sociopathic or criminalistic attitude,' his motivation and intelligence, and that he has the support of his wife and children.")

Based on the foregoing § 3553(a)(2) factors, a sentence outside the Sentencing Guidelines is just and sufficient given the circumstances of the offense and after considering Mr. Pogosyan's nature, health, and history.

**C. Kinds of Sentences Available.**

A review of the sentences imposed in cases with offense conduct involving conspiracy to violate export control laws listed by the Department of Justice shows probation, home confinement, imprisonment, and a fine as available sentences. The length of any term of imprisonment is within the Court's discretion up to the statutory maximums under 18 U.S.C. § 371 and 18 U.S.C. § 554, after consideration of the factors outlined in §3553(a). Moreover, as discussed below, a sentence of home confinement and supervised release is well within the

Court's discretion and will not create a sentencing disparity among similarly situated defendants. In contrast, as explained in more detail below, a sentence imposed within the Sentencing Guidelines here would create an unjust disparity.

**D. Applicable Sentencing Guidelines and Pertinent Guidelines' Policy Statements.**

First, the statutory index to the Sentencing Guidelines for Mr. Pogosyan's offense of conviction on Count I states that Guideline 2M5.1(a)(1) should apply. Application Note 2 of U.S.S.G. §2M5.1 directs courts to consider the degree to which the violation threatened a security interest of the United States, the volume of commerce involved, the extent of planning or sophistication, and whether there were multiple occurrences. Where such factors are present in an extreme form, a departure from the Guidelines may be warranted.

Mr. Pogosyan respectfully submits to the Court that his violation did not involve a volume of commerce in United States manufactured goods or the types of goods which would threaten the security interest of the United States.

Significantly, U.S.S.G. §5K2.11 calls for a departure in sentencing for lesser harms, when "the conduct may not cause or threaten the harm or evil sought to be prevented by the law" at issue. That section was written precisely for this type of case. The base level of Mr. Pogosyan's offense conduct is being scored the same as previous defendants who have profited enormously from their transactions and/or have exported or attempted to export missile components, aircraft engines, or parts necessary for the oil industry.

In short, Mr. Pogosyan's conduct, while a violation of law, would not justify a sentence within the advisory Sentencing Guidelines.

**E. Need to Avoid Unwarranted Sentence Disparities Between Similarly-Situated Defendants.**

The final statutory factor that weighs in favor of a sentence outside the Sentencing Guidelines for Mr. Pogosyan is the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6).

A review of these prior cases for export conspiracy violations reveals several cases with similar offense charges, a few of which are discussed in greater detail below:

In *United States v. Ali Mohammadi*, No. 1:12-CR-00591 (N.D. Ill., August 25, 2015), the defendant was sentenced to probation for 5 years for a § 371 conspiracy to violate the International Emergency Economic Powers Act ("IEEPA"). The defendant was the sole owner and operator of an export business that conspired to export a Series 446 Rate Integrating Gyroscope, a component of the TOW missile system, from the United States to Iran, with the intention of expanding operations and exporting dozens of these gyroscopes for use by the Iranian military.

In *United States v. Andre Telemi*, No. 1:09-CR-00736 (N.D. Ill. November 30, 2012), the defendant was sentenced to 5 years' probation after pleading guilty to a § 371 conspiracy to violate IEEPA. The defendant was convicted as part of a conspiracy to export connector adapters used in TOW and TOW2 missile systems from the United States to Iran.

In *United States v. Joyce Eliabachus*, No. 2:19-CR-00420 (D.N.J., October 6, 2020), the defendant, a U.S. citizen, coordinated and profited from the export of over $5 million worth of aircraft components from the U.S. to Iran over the course of four years. Many of the exported goods were solicited on behalf of and exported directly to Iranian airline companies who had been designated by the U.S. government as posing a threat to U.S. national security prior to the

exports. The defendant received a sentence of 18 months, well below the applicable Guidelines range.

In *United States v. Mehdi Hashemi*, No. 1:19-CR-0254 (C.D. Cal., July 6, 2020), the defendant was sentenced to 12 months and 1 day after pleading guilty to a § 371 conspiracy to violate IEEPA. Over a three-year period, the defendant successfully exported to Iran several precision-cutting machines listed on the BIS Commerce Control List and capable of making weapons parts, uranium enrichment components, and components for nuclear explosive devices.

In *United States v. Shantia Hassanshahi*, No. 1:13-CR-00274 (D.D.C., December 12, 2016), the defendant was sentenced to 12 months and 1 day after pleading guilty to a § 371 conspiracy to violate IEEPA. The defendant owned companies in the U.S. and Iran and used a co-conspirator in Armenia to buy electromechanical devices from the U.S. company and then sell and ship the goods to his Iranian company. The conspiracy lasted at least 4 years and involved a minimum of $1 million of goods.

In *United States v. Massoud Habibion*, No. 1:11-CR-00118 (D.D.C., May 16, 2012), the defendant was sentenced to 13 months after pleading guilty to a § 371 conspiracy to violate IEEPA. The defendant conspired with several other individuals over the course of three years and shipped millions of dollars' worth (at a rate of over $700,000 per month) of computer-related goods to Dubai for re-export to end users exclusively in Iran

For reasons explained in this Memorandum, Mr. Pogosyan respectfully asks that the Court find the advisory Sentencing Guidelines range is disproportionately high in relation to the nature and circumstances of his offense, when considered in its full context, and when compared to other sentences that have been imposed in comparable federal cases.

**F. Need to Provide Restitution to Victims of Offense.**

We believe restitution is not applicable in this case because there are no identifiable victims who suffered a monetary loss as a result of the defendant's conduct.

## V. CONCLUSION

Mr. Pogosyan stands before the Court with deep remorse. He is solely to blame for his unfortunate predicament. In imposing sentence, Mr. Pogosyan pleads with the Court to consider the impact of his conviction, his positive contributions to his family and the community over the years, the isolated nature of his criminal conduct, and the significant losses and punishment he has already suffered.

Based on the foregoing reasons and any other that may appear to the Court, we respectfully submit that a sentence of home confinement and supervised release is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. §3553(a).

Dated: September 30, 2025

Respectfully submitted,

**BERLINER CORCORAN & ROWE LLP**

By: */s/ William F. Coffield*

William F. Coffield (D.C. Bar No. 431126)
1101 17th Street NW, Suite 1100
Washington, D.C. 20036
Tel: (703) 608-5975
wcoffield@bcrlaw.com

*Attorney for Defendant Andrew Pogosyan*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

*/s/ William F. Coffield*

William F. Coffield